UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:14-98-DCR-CJS |
| | ) | and |
| V. | ) | Civil Action No. 5:17-312-DCR-CJS |
| | ) | |
| MICAH T. ISRAEL, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on *pro se* Defendant Micah Israel's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 115). The United States filed its Response (R. 123) and, although untimely (*see* R. 124; R. 126), Defendant has filed a Reply.[1] (R. 127). With his Reply, Defendant also filed a separate Motion for Evidentiary Hearing which included a request for counsel to be appointed. (R. 128). The United States responded on November 8, 2017. (R. 130). Having all relevant documents before the Court, this matter is ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, it will be **RECOMMENDED** that Defendant's § 2255 Motion (R. 115) and Motion for Evidentiary Hearing (R. 128) be **DENIED.**

I.    **BACKGROUND**

On September 4, 2014, a federal grand jury returned an Indictment charging Defendant Israel with the knowing and intentional attempt to possess with the intent to distribute 500 grams or more

---

[1] Defendant's § 2255 Motion was submitted to the undersigned's Chambers by the Clerk and, while the Motion was being processed, Defendant filed his Reply, knowing it to be late (*see* R. 127-2) because the presiding District Judge had denied his previous request for an extension of time to file a reply. (R. 126). Even if Defendant's Reply had been timely filed, it does not set forth any new information or argument having a meaningful impact on the Court's analysis of his § 2255 Motion.

of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a), all in violation of 21 U.S.C. § 846. (R. 1). Following the issuance of an arrest warrant (R. 3), Israel was arrested on September 9, 2014, (*see* R. 8) and pleaded not guilty at arraignment the following day. (R. 13). Defendant's jury trial commenced on February 2, 2015 (R. 51), and the jury returned a guilty verdict for the sole count against him on February 3, 2015. (R. 52).

The evidence at trial established that Israel had attempted to purchase one kilogram of cocaine from his codefendant Emmanuel Chenault. *See United States v. Israel,* 662 F. App'x 382, 383-85 (6th Cir. 2016) (opinion on direct appeal) (describing case facts). Chenault had unknowingly been involved with a law enforcement confidential informant ("CI") in what Chenault believed to be a transaction to obtain several kilograms of cocaine. On July 1, 2014, the CI fronted Chenault with what Chenault thought was four one-kilogram bricks of cocaine, though the bricks were actually four blocks of wood wrapped in tape, axle grease, and cellophane. Chenault left his meeting with the CI with possession of the purported bricks of cocaine, intending to sell them and return with payment of $30,500 for each brick. *Id.*

The same date and while under the surveillance of law enforcement, Chenault traveled to Defendant Israel's house and, after being inside the house a short time, Chenault left the residence with what appeared to be a money bag. Shortly after driving away, Chenault was stopped by police; $35,000 and three of the fake cocaine bricks were seized from his vehicle. As detailed by the Sixth Circuit:

> Meanwhile, minutes after Chenault drove away, undercover officers observed Israel pacing back and forth in his front yard. Israel was arguing with someone on the phone and, according to one police observer, "looked agitated and stressed." He then went back into his house and quickly exited again, this time leaving in his car. At

> this point, officers attempted to stop and detain Israel.  However, Israel had other plans.  He took the officers on a slow-speed car chase, evading two road blocks and eventually arriving back at his house.  During the brief escapade, he called his girlfriend, Jashae Watts, and told her to "go into the bathroom, . . . get the stuff that was in there[,] and throw it over the fence."  When Israel finally arrived back at his house, he was arrested without incident.

*Id.* at 384.  Police spoke with Israel's girlfriend at the residence.  She told law enforcement that she had communicated with Israel after he left the residence, at which time he told her to go into the bathroom and get rid of everything and throw it over the fence and she did so. (R. 96, at 86, 89-90).  Police later executed a search warrant at Israel's house, finding items associated with drug trafficking—digital scales with cocaine residue, plastic baggies and bottles containing cutting agents, a money counter, a firearm and ammunition, cocaine test kits, and marijuana cultivation and cocaine handbooks.  *United States v. Israel,* 662 F. App'x at 384.  On the other side of the fence at Israel's property line, police also found one of the faux cocaine bricks, a digital scale, and a rubber glove with grease residue.  *Id.*

Following the entry of the jury's verdict and prior to Defendant's sentencing hearing, the Probation Office prepared a Presentence Investigation Report ("PSR").  (R. 77).  The PSR calculations under the Sentencing Guidelines placed Defendant at a base offense level of 24.  (*Id.* at 6, ¶ 24).  The offense level was increased 2 levels because Defendant possessed a firearm during the commission of the underlying offense (*id.* at ¶ 25), and increased 2 additional levels for obstruction of justice, Israel having instructed another person to discard physical evidence.  (*Id.* at ¶ 28).  Defendant's adjusted offense level was therefore calculated to be a level 28.  (*Id.* at ¶ 29).  However, after determining that Defendant qualified as a career offender, his base offense level was increased to a level 37.  (*Id.* at ¶ 32).

The PSR also contained an analysis of Defendant's background, including his criminal history. (*Id.* at 7-12). In light of his career offender status, the PSR lists Defendant's criminal history category as VI. (*Id.* at 10, ¶ 41). Based on Defendant's total offense level of 37, and a criminal history category of VI, his Sentencing Guidelines range was calculated to be 360 months to life in prison. (*Id.* at 16, ¶ 80).

Defendant appeared before the District Judge for sentencing on May 20, 2015. (R. 72). The Court adopted the findings and guideline calculations set out in the PSR (*id.*), and sentenced Defendant to 420 months' imprisonment, to be followed by an 8-year term of supervised release. (R. 74). Defendant appealed his conviction and sentence on May 27, 2015. (R. 78). Defendant's conviction and sentence were affirmed by the Sixth Circuit Court of Appeals on October 31, 2016. (R. 111). Defendant's time to petition the United States Supreme Court for certiorari expired on January 29, 2017, and Defendant filed no such petition.

On July 26, 2017, Defendant filed the pending motion pursuant to 28 U.S.C. § 2255. (R. 115). In his motion, Defendant presents five claims; one claim challenging the constitutionality of the criminal statutes under which he was convicted and sentenced, claiming 21 U.S.C. § 841 fails to provide an appropriate penalty and § 846 is unconstitutionally vague, and four claims alleging ineffective assistance of counsel. (*Id.* at 4-9). Defendant alleges his trial counsel was ineffective for: 1) failing to properly advise him of his charges; 2) failing to argue against sentence enhancement despite his request; 3) failing to object to an agent's testimony at trial and move to suppress; and 4) failing to present an alternative description of the events leading to his arrest. (*Id.*).

In its Response, the United States argued that neither statute referenced by Defendant is unconstitutional. (R. 123). The United States also argued that Defendant's trial counsel was not

ineffective, and supported its argument with references to an affidavit from Defendant's trial counsel. (*Id.*; R. 123-1). According to the United States, Defendant was adequately informed on multiple occasions of the charges, defense counsel effectively represented Defendant with respect to sentencing enhancements, defense counsel properly questioned a responding law enforcement officer, and defense counsel was never aware of Defendant's alternative description of the facts and therefore was not ineffective in allegedly failing to raise such an argument. (R. 123, at 3-9).

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a defendant must demonstrate his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." To prevail on a § 2255 motion alleging a nonconstitutional error, a defendant "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States,* 368 U.S. 424, 428 (1962)). To succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993)). In sum, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-

5

97 (6th Cir. 2003)).  A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

### A.    Unconstitutionality Ground

In his § 2255 Motion, Defendant claims that 21 U.S.C. §§ 841 and 846 are unconstitutional. (R. 115 at 6).  He claims that § 841 is unconstitutional as it applies to him because it does not provide a penalty for his action, as the appropriate punishment is determined by the quantity of illegal substance involved, and Defendant did not possess any quantity of illegal substance.  (R. 115-1, at 12-16).  As for § 846, Defendant claims the statute is unconstitutionally vague and it "does not adequately inform citizens as to what is illegal."  (*Id.* at 17).

Defendant did not challenge the constitutionality of §§ 841 and 846 on direct appeal.  *See Israel*, 662 F. App'x at 386.  He raises this challenge for the first time in his § 2255 Motion.  It is well-settled that a defendant is generally barred from raising claims in a § 2255 motion that he failed to present on direct appeal.  *United States v. Gibson*, 424 F. App'x 461, 466-67 (6th Cir. 2011) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).  The Sixth Circuit has applied procedural default to a § 2255 defendant's claim to the extent the defendant argued, similar to Israel's argument here, that the statute under which she was convicted was unconstitutional for failing to allege a specific quantity of drugs.[2]  *See Regalado v. United States*, 334 F.3d 520, 527-28 (6th Cir. 2003).

---

[2] Multiple district courts within the Sixth Circuit have also held that a collateral claim was procedurally defaulted to the extent the claim was based on a criminal statute's unconstitutionality because the defendant failed to raise the claim on direct appeal.  *See, e.g., United States v. Thornton,* No. 3:05-CR-184, 2014 WL 2815346, at *3 (S.D. Ohio June 23, 2014), *report and recommendation adopted,* 2014 WL 4071807 (S.D. Ohio Aug. 14, 2014); *Gaiter v. Bobby,* No. 5:11CV2743, 2014 WL 6687218, at *36 (N.D. Ohio Nov. 26, 2014).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' (citations omitted), or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Smith v. Murray*, 477 U.S. 527, 537 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011). Israel has not made any effort to show that cause and actual prejudice exist as to allow the adjudication of this claim.

Nor in his unconstitutionality claim has Israel argued his actual innocence.[3] A defendant who fails to establish cause and prejudice may still be able to obtain review of a procedurally defaulted claim if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Murray v. Carrier,* 477 U.S. 478, 495-96 (1986). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Lee v. Brunsman,* 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Bousley v. United States,* 532 U.S. 614, 623 (1998)). Moreover, the actual innocence exception deals with a "severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1933 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)). For a claim of actual innocence to be credible, a defendant must come forward with "new reliable evidence—whether it be exculpatory scientific

---

[3] Construing Defendant's *pro se* Motion liberally, in one of his ineffective assistance of counsel claims Defendant does advocate that he is innocent of attempting to buy a kilogram of cocaine from Chenault for $35,000. This ineffective assistance argument is addressed below in Section II.B.4. Giving Defendant the benefit of the doubt that he would look to these assertions as evidence of his actual innocence, the assertions are nevertheless deficient as discussed hereinabove.

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup,* 513 U.S. at 332. The Supreme Court has recognized it is an extraordinary case that can meet *Schlup's* high threshold for establishing actual innocence. *See id.* at 321. Ultimately, a defendant must prove that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.* at 327-29; *House v. Bell,* 547 U.S. 518, 536-37 (2006).

Here, the only allegedly "new reliable evidence" offered by Defendant in support of his purported innocence is student loan documentation (R. 129) he filed to support his declaration statement attached to his Reply (R. 127-1). Israel declares that he "never knew that the wood [block used in place of a cocaine brick] was in My house until after Emmanuel Chenault was allowed to use My bathroom" (*id.* at ¶ 7); that he "tried to contact Chenault on My cell phone to question him about the anonymous package left under My bathroom cabinet" (*id.* at ¶ 10); that "Chenault stole cash from My residence when he secretly left (while I was using the bathroom)" (*id.* at ¶ 9); and that Chenault had "stole[n] My tuition money that I had got through student loan" (*id.* at ¶ 12). Defendant supplemented the declaration with copies of school loan papers he claims evidence his source for the money in his house that Chenault stole from him. (R. 129).

Even assuming Israel could establish this loan evidence is "new," it is hardly adequate to show that, had it been presented at trial, no reasonable juror would have convicted Israel. The evidence presented at Israel's trial has been carefully reviewed. Law enforcement agents and the cooperating informant testified to the circumstances surrounding the arranged transfer of the purported kilograms of cocaine between Chenault and the CI, and the sale of some of that purported

cocaine from Chenault to Israel. These various witnesses explained their participation in or observation of these events, the timing of these events, and the recording or surveillance of some of the events. They testified concerning the physical evidence retrieved from Chenault upon traffic stop and upon search of Israel's house and yard, including the fake cocaine bricks, currency, and the items associated with drug trafficking that were found in Israel's house. Israel's girlfriend also testified at trial, explaining to the jury Israel's instruction for her to remove incriminating items from the bathroom and dispose of the items by throwing them over a fence into an adjoining yard. (R. 95; R. 96 - trial transcripts).

By declaration, Defendant now claims Chenault left the fake brick of cocaine at his house without his knowledge and stole the money from him. But with the exception of the cash found with Chenault, Israel offers no actual evidence to counter the testimonial details and the physical evidence provided at trial. The loan paperwork now put forth by Israel appears to document that from June 2010 through September 2013 Israel received a total of approximately $29,000 in student loan funds for purposes of attending Bluegrass Community and Technical College. (R. 129-1, at 2). This documents that Defendant received student loans. However, it is not credible nor sufficient to counter the reasonable inference that the $35,000 cash found with Defendant Chenault was provided by Israel as payment for a purported kilogram of cocaine. At best, the loan papers show Israel had a source of substantial funds to support Israel's contention that Chenault stole the money from him. But that evidentiary connection is weak, as the documents suggest Israel received the loan monies over more than a three-year period, for schooling, rather than personally retaining and accruing the loan proceeds, and in cash no less.

This "new" evidence has little probative value based on the other evidence of Israel's involvement with drugs generally and this fake cocaine transaction specifically. Any probative value the evidence does have would not overcome the evidence of guilt at trial. Defendant simply has not shown, based on this purported new evidence, that "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 298. These loan documents and Defendant's conclusory statements of what they represent do not meet the demanding standards set forth in *Schlup,* which requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup,* 513 U.S. at 316. As Defendant has not made any effort to show cause and actual prejudice exist to excuse his procedural default, and Defendant has not satisfied the requirements of the actual innocence exception, Defendant's claim that §§ 841 and 846 are unconstitutional is procedurally defaulted.

Even if Defendant's unconstitutionality claim were not procedurally defaulted, it would still fail on the merits, as neither of the criminal statutes referenced by Defendant is unconstitutional. Defendant attacks § 841 based on subsection (a)(2) of the statute (R. 123, at 10; R. 151-1 at 12-16), but Defendant was convicted under subsection (a)(1). (R. 74). Defendant also attacks the constitutionality of the penalty provision of § 841, provided in subsection (b). However, Defendant fails to recognize that he was convicted under §§ 841 and 846 *together*. (*See* R. 74). Even assuming arguendo that Defendant was correct in asserting § 841 independently does not provide a penalty for his conduct specifically, § 841 must be read in conjunction with § 846, which provides that "[a]ny person who *attempts* or conspires to commit any offense defined in this title shall be subject to the

10

same penalties as those prescribed for the offense, the commission of which was the object of the attempt." 21 U.S.C. § 846 (emphasis added).

To the extent Defendant claims 21 U.S.C. § 841(a)(2) is unconstitutional, the constitutionality of § 841(a)(2) is irrelevant here, as Defendant was convicted under § 841(a)(1). (*See* R. 74). Construing Defendant's Motion liberally, to the extent Defendant asserts he *should have been* convicted under § 841(a)(2), such argument fails, as Defendant failed to raise such a ground on direct appeal. *See Gibson*, 424 F. App'x at 466-67.

As for 21 U.S.C. § 841(a)(1), the section of the statute under which Defendant was actually convicted, that section states that it is unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." As previously stated, § 841 must be read in conjunction with § 846. Defendant was found guilty of "knowingly and intentionally attempt[ing] to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine." (R. 77, at 3, ¶ 1). Whether Defendant actually possessed cocaine and in such quantity is irrelevant. When read in conjunction with § 846, the conduct which is penalized under § 841 effectively becomes the *attempt* to possess such a quantity of cocaine and, contrary to Defendant's assertion, § 841(b) sets forth a penalty for such.

Regarding 21 U.S.C. § 846, Defendant claims "the federal law of *conspiracy* is vague and does not adequately inform citizens as to what is illegal." (R. 115-1, at 17) (emphasis added). Defendant essentially argues that the statute punishes thought, and not action, and is therefore unconstitutional. *Id*. However, as previously stated, § 846 must be read in conjunction with § 841. The action that is punished is set forth in § 841, which makes it unlawful "for any person knowingly

or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a).

Further, Defendant was not convicted under the *conspiracy* portion of the statute, but rather the *attempt* portion.[4] (R. 123, at 10; R. 1, at 1-2). Defendant offers no authority, and this Court is unaware of any, successfully attacking the constitutionality of a statute proscribing an attempt to commit an unlawful act. The constitutionality of § 846 has been upheld numerous times by the Sixth Circuit Court of Appeals. *See, e.g.*, *United States v. Mazzio*, 48 F. App'x 120, 130 (6th Cir. 2002) (upholding the defendant's conviction for violating §§ 841 and 846 after being the subject of a drug crime investigation); *United States v. Spearman*, 39 F. App'x 63, 72 (6th Cir. 2002) (ruling § 841 and § 846 constitutional as applied to a defendant convicted of attempt to possess with intent to distribute cocaine as a result of the defendant's involvement in an undercover operation). Therefore, Defendant's argument that 21 U.S.C. §§ 841 and 846 are unconstitutional fails because it is procedurally defaulted and, alternatively, because it is without merit.

## B.    Claims of Ineffective Assistance of Counsel

A post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel. *United States v. Crowe,* 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)). Here, as stated above, Defendant asserts four claims of ineffective assistance of his trial counsel, Benjamin Hicks: 1) failing to properly advise him of his charges; 2) failing to argue against sentence enhancement despite his request; 3) failing at trial

---

[4] Defendant specifically references this distinction in conjunction with his ineffective assistance of counsel claims in his § 2255 Motion, discussed below. (R. 115-1, at 5); *infra* Section II.B.1.

12

to object to a witness's testimony and move to suppress; and 4) failing to present at trial an alternative description of the facts pertaining to the events leading to his arrest.  (R. 115, at 4-9).

The Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To meet this standard, the Supreme Court set forth a two-part test.  First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88.  To demonstrate this first prong, a defendant must point to specific errors in counsel's performance, and the reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  In reviewing this prong, the lower court is to apply a deferential standard; there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

The second prong of the test requires a defendant to demonstrate that the deficient performance prejudiced his defense. *Id.* at 687.  Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Pough*, 442 F.3d at 961.  A defendant must establish both prongs by a preponderance of the evidence. *Id.* at 964.  Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 967; *see also Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004) (stating "[w]e do not need to address the question of

13

competence, however, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.") (internal citations omitted).

### 1.    Misadvising Defendant of the charge against him

Defendant argues generally that Attorney Hicks advised him as if he had been charged with *conspiracy* to possess and distribute cocaine, rather than *attempt* to possess and distribute cocaine as he was actually charged.  Israel claims this misadvise was material and prejudiced him, because it influenced his decision not to enter a guilty plea pursuant to a plea agreement and instead proceed to trial. (R. 115-1, at 5).  To evidence this error, Defendant attached a letter from trial counsel to Defendant dated December 19, 2014, wherein counsel referred to Defendant as facing a conspiracy charge, rather than an attempt charge.  (*Id.* at 34) (emphasis added).

The subject letter does, in fact, use the word conspiracy rather than attempt.  In considering Defendant's argument, the reference in the letter must be viewed in context.  Counsel wrote to Israel to report that he had filed the motion to suppress Defendant wanted filed.  (*Id.*).  He also informed Israel that he believed, based on the law and the affidavit supporting the challenged search warrant, that the evidence taken from his house would not be suppressed.  He went on to note that even if those items taken from Israel's house were to be suppressed, because of the other case evidence, "you would still be facing the same conspiracy charge." (*Id.*).  Thus, counsel did in fact refer to it as a conspiracy charge rather than a charge of attempt.

But viewed in context, this single mistaken reference in counsel's letter does not constitute performance by counsel falling "below an objective standard of reasonableness."  *Strickland,* 466 U.S. at 687-88.  Defendant essentially concedes as much because he further argues not just that the letter contains an error; rather, he points to the letter as evidence corroborating his more general

assertion that counsel actually misadvised him about the substance of what he was charged with. Defendant sets forth the legal elements for conspiracy and attempt in his Motion, maintains that counsel never explained to him the elements necessary to prove the charge of attempt, and seems to suggest that counsel instead advised him of the elements of conspiracy, though Israel does not expressly allege this. Israel contends that if Attorney Hicks had actually advised him about the elements of attempt, he would have entered into a plea agreement with the United States. (R. 115-1, at 5, 7, 32-33).

As noted above, when viewed in context, the letter itself does not actually *advise* Defendant about the elements of a conspiracy charge or an attempt charge. To the extent Israel points to the letter as evidencing counsel actually believed him to be charged with conspiracy and, consequently, counsel's representation of and advice to him was all done based upon this erroneous premise as to the charge, Israel has not presented any evidence of this, just conclusory statements from which Israel would like the Court to infer that counsel did so advise. But the affidavit of counsel explains that the crux of his communications with Israel were about ways to try and defend the case if case discovery showed that Defendant knowingly received what he thought to be cocaine in exchange for over $30,000. (R. 123-1, at ¶ 3). Counsel states he advised Defendant that if the jury believed from the evidence that he did this, he would be convicted. (*Id.* at ¶ 4). Therefore, Defendant has not shown that counsel rendered deficient performance based upon the mistaken reference to conspiracy in the letter.

Moreover, even assuming Defendant could show by a preponderance of evidence that Attorney Hicks actually did counsel and advise him based on an incorrect charge, and that this conduct by counsel fell below an objective standard of reasonableness, Defendant has not shown by

15

a preponderance of evidence that he was prejudiced. Defendant maintains that counsel's conduct did prejudice him because it influenced his decision not to enter into a plea agreement with the United States and change his plea. (R. 115-1, at 5). Therefore, according to Defendant, his decision to maintain his not guilty plea on the sole count against him rather than to plead guilty was unintelligent, unknowing, and involuntary.[5] (*Id.* at 7).

Israel's claimed unawareness of actually being charged with attempt due to his counsel's error could not have influenced his plea decision as he alleges. As the Government points out, the record reflects Israel had been informed of his actual charge of *attempting* to possess with intent to distribute cocaine, both at the outset of the case (*see* R. 13, Criminal Minutes from Arraignment and Plea, "Copy of Indictment given to the defendant." and "The Court advised Defendant of the charges and potential penalties.") and during the trial (*see* R. 96, at 129, jury instruction conference, "the first sentence of paragraph 1, that should read, 'The defendants are charged in Counts 1 and 2 of the indictment with the crime of attempting to possess,"; R. 96, at 143, court's instructions to the jury, "defendants are charged in Counts 1 and 2 with attempting to commit the crime of possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine").

In his untimely Reply, Defendant points out the *Strickland* standard applies to his counsel informing him of his charge, not the Court doing so. The Court proceedings are, however, relevant to show that even if defense counsel's performance were deficient, Defendant cannot satisfy

---

[5] Defendant cites to three cases to support his claim that his decision not to plead guilty was unintelligent, unknowing, and involuntary; however, the defendant in each of the three cited cases pleaded guilty. *See Henderson v. Morgan,* 426 U.S. 637 (1976); *Brady v. United States,* 397 U.S. 742 (1970); *United States v. Ormsby,* 252 F.3d 844 (6th Cir. 2001). The underlying arguments in those cases hinged upon whether the defendants adequately understood the rights they were waiving by pleading guilty, whereas here Israel did not waive any rights because he did not plead guilty.

*Strickland's* prejudice prong because he had been informed that he was charged with attempt. Defendant tries to say he did not understand the Court's explanation of the charges during trial due to confusion caused by Attorney Hicks's prior representation to him that he was charged with conspiracy. This is disingenuous. Defendant was also informed of the charge at his initial appearance and received a copy of the indictment. In fact, the record reflects that Defendant had been previously represented by a different court-appointed attorney, Adele Brown, who had been appointed to represent him at his September 10, 2014 initial appearance and arraignment. (*See* R. 13). Indeed, the transcript of that proceeding reveals Defendant was not only informed but confirmed he understood the charge against him.

> MS. BROWN:     Yes, Your Honor, I've obtained a copy of the indictment and have given Mr. Israel one. We have reviewed it together. I believe he understands the charge against him, and also the forfeiture allegation.
>      And we have discussed the penalties, prepared to waive formal reading, and enter a plea of not guilty at this time.
>
> THE COURT:     Thank you.
> . . . .
>      For the defendants I am going to briefly talk about the content of the indictment with you, including the charge and the penalties. I'm doing that just to make sure that you do on the record have that information.
> . . . .
>      The indictment contains one substantive count against each of you. It actually alleges the same conduct but in different counts, one for each defendant.
>      Mr. Chenault is named in Count 1, Mr. Israel is Count 2.
>      The charge is that on or about July 1st, 2014, in Fayette County, in this district, that the defendant did knowingly and intentionally attempt to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine.
>      Cocaine is a Schedule II controlled substance.
>      That conduct, if proven, would violate 21 USC, Section 841(a)(1), and Section 846, which is the federal **attempt** statute.
>      Should a defendant be convicted on that charge, the penalty would include up to five – I'm sorry, at least five years of imprisonment. So it would

17

be a minimum of five years of imprisonment, up to a maximum of 40 years, a fine up to $5 million.

. . . .

          If a defendant is convicted on this **attempt** charge and has a prior felony drug conviction on his record properly proven, the penalties would increase.

          In that circumstance the imprisonment term would be at least 10 years, with a maximum of life in prison.

          The fine would move to $8 million as a maximum.

. . . .

          So those are the charges, and those are the penalties that could apply.

          Mr. Chenault, do you understand those things?

DEFENDANT CHENAULT:    Yes, sir.

THE COURT:    Thank you.

          Mr. Israel?

DEFENDANT ISRAEL:    Yes, sir.

(R. 98, at 7-11) (emphasis added).  The case was assigned a November 17, 2014 jury trial date, which trial date was subsequently continued to December 15, 2014, and throughout the weeks leading up to the trial date Israel was represented on the attempt charge by prior counsel.  It was not until Attorney Brown filed on November 20, 2014 a Motion to Withdraw (R. 30), and that Motion was subsequently granted on November 26, 2014 (R. 32), that Attorney Hicks was appointed to represent Defendant in the case.  The record further evidences that there was no superseding indictment; the attempt charge initially presented against Defendant did not change.[6]  Therefore, Defendant maintaining he was unaware he was charged with attempt or confused to the extent that he claims is belied by the record.

---

[6] In fact, in Israel's Declaration attached to his § 2255 Motion he discusses informing his counsel of facts supporting his innocence, claiming counsel was ineffective for not following up on and presenting the information at trial.  This is further addressed in Section II.B.4.  But it is noteworthy that Defendant swears in his Declaration that "I advised Mr. Hicks from the beginning of the attorney/client relationship, that I had not **attempted** to purchase a 'Fake Kilo' of Cocaine from Chenault at no time." (R. 115-1, at 32, ¶ 4) (emphasis added).

Israel contends he would have accepted a plea agreement had he been advised by Attorney Hicks on the proper charge. But Defendant has not made such a showing. Defendant's trial counsel stated in his sworn affidavit that he had numerous conversations with Defendant regarding a plea agreement presented by the Government, and Defendant "never indicated he would plea[d] guilty," but rather instructed counsel to instead focus on the motion to suppress. (R. 123-1, at 3). Indeed, that Defendant's attention was directed to trying to suppress evidence is confirmed by his prior counsel's Motion to Withdraw, wherein she explains to the Court that "Defendant has informed her that he does not want her to represent him due to her failure to file a motion to suppress the evidence seized during the execution of the search warrant." (R. 30).

Attorney Hicks also noted that in early January 2015 he raised trying to engage in further plea agreement negotiations with the United States, but Israel wanted to focus on the suppression motion. (R. 123-1 at ¶ 9). The record reflects that even in mid-January 2015, as the District Judge was reviewing the Magistrate Judge's Recommended Disposition to deny the suppression motion, Defendant sent a letter to the District Judge complaining about the quality and alteration of document copies associated with the search warrant that were provided to him by his counsel (*see* R. 50), further indicating Israel's continued focus on the suppression issue. The letter also questions counsel's interest and efforts in preparing for trial (*id.*), consistent with Attorney Hicks's affidavit statement concerning Defendant's focus on the suppression motion and trial, rather than plea discussions.[7]

---

[7] In his letter, Defendant also asked that Attorney Hicks be replaced with a third attorney, which construed motion request was denied by the Court. (R. 49).

Defendant simply has not made any showing that the claimed error of trial counsel misadvising him about his charge actually influenced his decision not to enter into a plea agreement and change his plea to guilty. Defendant's assertions of his innocence (*see* R. 115-1, at 32, ¶¶ 4, 5, 6), focus on suppression, and complaints regarding counsel's trial preparation efforts also undercut his § 2255 Motion's stance that he would have pled guilty but for being misadvised about conspiracy rather than attempt. *See Comrie v. United States,* 455 F. App'x 637, 640 (citing *Humphress v. United States,* 398 F.3d 855, 859 (6th Cir. 2005) and *White v. United States,* 313 F. App'x 794, 798 (6th Cir. 2008)). It was not until Defendant's filing of his § 2255 Motion that he asserted he would have pleaded guilty.

In summary, the record reflects Defendant was informed and aware of the charge against him, directed his focus to pursuing suppression and preparing for trial, and demonstrated an unwillingness to pursue a plea agreement prior to trial. Thus, Defendant has not met his burden of showing either that his trial counsel performed deficiently or, even assuming that he did, that Defendant was prejudiced because he would otherwise have entered into a plea agreement had counsel properly advised him on the charge presented against him.

### 2.    Arguing Against Sentence Enhancement / Career Offender Status

In 2003 Defendant was convicted in the Fayette County Circuit Court in Lexington, Kentucky, of trafficking in a controlled substance - 1st degree (cocaine) in violation of Kentucky law. This prior state conviction is noted in the PSR (R. 77, at ¶ 37) and was relevant to Defendant's sentencing. Israel argues in his § 2255 Motion that Attorney Hicks was ineffective at the sentencing hearing because he failed to challenge the use of this 2003 trafficking conviction to enhance his sentence.

Specifically, Israel argues counsel was deficient in two ways.  First, as argued in his § 2255 Motion, Israel says counsel should have objected to the Government's requested enhancement of his sentence under 21 U.S.C. § 851 based upon this 2003 conviction. (R. 115-1, at 7-11).  He maintains counsel should have requested an adversarial hearing to challenge the enhancement as the statute permits, and that "had defense counsel . . . objected to the 851 enhancement during the sentencing hearing, there is a high probability that the District Court would have declined to pursue the enhancement." (*Id.*, at 8, 10).  Second, Israel argues, primarily in his Reply, that he was prejudiced by counsel's failure to challenge use of his 2003 conviction as a predicate offense for career offender designation.  (R. 127, at 5-9).

Defendant's first argument regarding statutory enhancement is misplaced.  Even if counsel had objected to the enhancement of Defendant's potential statutory penalty based upon his 2003 drug trafficking conviction, it was of no consequence — the statutory enhancement still applied.  On September 16, 2014, the United States filed its Notice Regarding Enhanced Statutory Punishment (R. 17), noting therein its position that Defendant would be subject to an enhanced statutory punishment if convicted of the indicted charge because he has a prior conviction for trafficking in cocaine, first degree, imposed by the Fayette Circuit Court and a prior conviction for possession with the intent to distribute cocaine base imposed by this federal District Court. (*Id.*).

Under the then applicable penalty statute in this case, 21 U.S.C. § 841(b), Defendant was subject to a term of imprisonment of not less than five years and not more than forty years.  21 U.S.C. § 841(b)(1) (West 2015).  But the statute further provided that if the Defendant had **a** prior final conviction for a felony drug offense, the term of imprisonment was increased to not less than ten years and not more than life.  *Id.*  Thus, the statutory enhancement applied provided Defendant

21

had at least one prior felony drug offense. Here, the United States noted two prior felony drug convictions in its § 851 Notice.

Israel argues that his lawyer failed to challenge using his 2003 state trafficking conviction to enhance his statutory penalty. However, such an argument would have been futile since Defendant's 2005 federal felony drug conviction alone was sufficient to subject Defendant to the statutory enhancement, and Defendant is not challenging the validity of this 2005 conviction as being a prior final conviction for a felony drug offense. Under *Strickland,* Defendant's counsel had no obligation to present a meritless argument, and thus Attorney Hicks's failure to object to application of the statutory enhancement did not constitute deficient performance. *United States v. Martin,* 45 F. App'x 378, 381-82 (6th Cir. 2002) ("[f]ailure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel"). Nor can Defendant show he suffered prejudice, despite his unfounded assertion of a "high probability" that the Court would not have applied the statutory enhancement had his counsel challenged use of the 2003 state trafficking conviction. The statutory enhancement was properly applied given Defendant's 2005 federal conviction. Only one prior final conviction for a felony drug offense is required for purposes of enhancement of the 21 U.S.C. § 841(b) statutory penalty.

The other criticism Israel raises with counsel's failure to challenge use of the 2003 conviction is also unavailing for him. He contends his counsel's failure to meaningfully challenge at sentencing the use of his 2003 state trafficking conviction resulted in him being erroneously designated with career offender status. (R. 127, at 5-9).

Defendants classified as career offenders are subject to an enhanced advisory sentencing guideline range under § 4B1.1 of the U.S. Sentencing Guidelines. If Israel were able to show that

his trial counsel's failure to challenge his 2003 conviction as a predicate offense constituted ineffective assistance at sentencing, the prejudice to Israel in the outcome of the proceeding is evident. The career offender designation significantly changed Defendant's Sentencing Guidelines calculations. His initial adjusted offense level was a 28 (*see* R. 77, at ¶ 29) and he was a criminal history category III (*id.* at ¶ 42), resulting in a recommended Guidelines sentencing range of 97 to 121 months. After applying the career offender enhancement of § 4B1.1(b)(1) of the Sentencing Guidelines, Defendant's offense level increased to a 37 (*id.* at ¶ 30) and his criminal history category increased to a VI (*id.* at ¶ 43), resulting in a recommended Guidelines sentencing range of 360 months to life. While the career designation did indeed result in a significant change in Israel's sentencing, the designation properly applied to him. Consequently, and as explained below, Defendant cannot show that counsel's failure to raise objection about his 2003 drug conviction constituted deficient performance under *Strickland.*

> Designation as a career offender under the Sentencing Guidelines requires:
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 4B1.1(a). Defendant's career offender designation was based upon his two prior convictions noted above – his 2003 state conviction for trafficking in cocaine, first degree and his 2005 federal conviction for possessing with intent to distribute cocaine base. (R. 77, at ¶¶ 37, 38).

Defendant does not dispute that his circumstances satisfy the first two requirements of § 4B1.1(a). Nor does he dispute that his 2005 federal conviction qualifies as a predicate controlled

substance offense under § 4B1.1(a).  And finally, he does not dispute that he was, in fact, convicted in 2003 of trafficking in cocaine, first degree, in violation of K.R.S. § 218A.1412.  Rather, he argues this 2003 conviction does not qualify as a controlled substance offense under § 4B1.1(a) and, therefore, not having two prior qualifying convictions, he should not have been subject to a guidelines enhancement based on career offender status.

Israel's legal position is that the elements of the state statute do not match with those of the comparable federal drug statute, 21 U.S.C. § 841(a); namely, "[t]he Kentucky statute does specify the knowingly mental state necessary to obtain a conviction, but does not include 'intentionally.'" (R. 127, at 9).  According to Israel, in pleading guilty in 2003 to violating Kentucky law, he "never admitted to 'intentionally committing the prior Kentucky conviction under KRS 218A.1412,'" (R. 127, at 7), because "intentional" is not an element of Kentucky's statute.  Therefore, says Defendant, under the categorical approach or the modified categorical approach his conviction under K.R.S. § 218A.1412 does not qualify as a prior controlled substance offense for career offender designation purposes.  Defendant cites to *Moncrieffe v. Holder,* 133 S. Ct. 1678 (2013) and *Descamps v. United States,* 133 S. Ct. 2276 (2013) in support of his legal position. (*Id.* at 7-9).  Israel says that Attorney Hicks's ignorance about this technical aspect of the career offender enhancement renders his representation at sentencing ineffective.

The Sixth Circuit applies a categorical approach in determining whether a defendant's prior conviction is a "controlled substance offense" for purposes of § 4B1.1.  *United States v. Butler,* 207 F.3d 839, 842-43 (6th Cir. 2000) (employing a categorical approach to determine whether a particular offense constituted a "controlled substance offense" or "crime of violence" under the Guidelines).  Under the categorical approach the fact of the prior conviction and the statutory

definition of the predicate offense are used to determine whether a prior conviction is a controlled substance offense. *Butler,* 207 F.3d at 843. However, if "the relevant statute of conviction does not supply a clear answer to [whether the defendant committed a controlled substance offense] the sentencing court may consult the indictment and either the jury instructions or plea agreement for the specific conduct with which the defendant was charged in order to appropriately characterize the offense." *United States v. Martin,* 378 F.3d 578, 581 (6th Cir. 2004). *See also United States v. Montanez,* 442 F.3d 485, 489 (6th Cir. 2006) ("If ... the categorical approach fails to be determinative, a sentencing court may look to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented,' . . . in order to determine whether the prior crime qualifies as a controlled substance offense.") (quoting *Shepard v. United States,* 544 U.S. 13, 16 (2005)); *see also United States v. Solomon,* 592 F. App'x 359 (6th Cir. 2014) (concluding, under the modified categorical approach, that defendant's prior state marijuana conviction qualified as a predicate offense for career offender status).

Here, the career offender requirement at issue is whether Israel's state trafficking conviction qualifies as a controlled substance offense. The Guidelines provide a definition of what constitutes a "controlled substance offense" for career offender status of § 4B1.1.

> The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Israel was convicted in 2003 of trafficking in cocaine, first degree under K.R.S. § 218A.1412. At that time, the statute provided:

(1) A person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in: a controlled substance, that is classified in Schedules I or II which is a narcotic drug . . . .
(2) Any person who violates the provisions of subsection (1) of this section shall: (a) For the first offense be guilty of a Class C felony.

K.R.S. § 218A.1412(1),(2)(a).  At that time and currently, cocaine is listed as a Schedule II controlled substance under Kentucky law.  K.R.S. § 218A.070.  And under Kentucky law, at that time and currently the sentence for a Class C felony is at least five but not more than ten years in prison.  K.R.S. § 532.020.  And finally, "traffic" under Kentucky law at that time, and currently, means "to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance."  K.R.S. § 218A.010.

Here, it is plain that Defendant's 2003 conviction under K.R.S. § 218A.1412 constitutes a controlled substance offense under the categorical approach because it is not possible to violate K.R.S. § 218A.1412 in a way that would not constitute a controlled substance offense as that term is defined in § 4B1.2(b).  That section, as quoted above, defines a controlled substance offense for purposes of § 4B1.1 as an offense prohibiting "manufacture, import, export, distribution, or dispensing of a controlled substance" . . . or the possession with intent to do same.  Trafficking under K.R.S. § 218A.1412 prohibits trafficking in a controlled substance—trafficking under K.R.S. § 218A.010 meaning "manufactur[ing], distribut[ing], dispens[ing], sell[ing], transfer[ing]," or possessing with such intent.  Each of these trafficking alternatives of K.R.S. § 218A.010 is explicitly covered by the definition found in § 4B1.2(b).  Because it is not possible to violate K.R.S. § 218A.1412's prohibition on trafficking in a way that does not come within the definition of controlled substance offense set forth in § 4B1.2(b), and because that offense under state law was punishable by a term of imprisonment exceeding one year, Israel's 2003 conviction under K.R.S.

§ 218A.1412 constitutes a predicate controlled substance offense under the categorical approach. It, combined with Israel's 2005 federal drug conviction, along with the fact that his instant conviction is for a federal felony controlled substance offense that occurred when he was over the age of 18, renders the career offender designation of § 4B1.1(a) applicable to him.

Defendant argues that in applying the categorical approach, the Court should be comparing the elements of K.R.S. § 218A.1412 with an analogous federal statute or a "generic" controlled substance offense, here 21 U.S.C. § 841(b). Defendant is mistaken. The Sentencing Guidelines already provide a definition for "controlled substance offense" against which a statute of prior conviction must be compared. Therefore, it is legally erroneous to compare the prior statute of conviction with a federal statute or some generic offense. *See United States v. Stevenson,* 2017 WL 319187, at *3 (E.D. Ky. Jan. 23, 2017) ("determining whether a prior conviction for a controlled substance offense is a qualifying predicate offense under Sentencing Guideline § 4B1.2(b) does not require comparing the elements of the offense with any 'generic' controlled substance offense."); *see also United States v. Jones,* 2016 WL 6993399, at *2 (S.D. Ohio Nov. 30, 2016) (same).

Israel's reliance on *Moncrieffe* and *Descamps* is misplaced. In *Descamps,* the Supreme Court explained the proper procedure to apply when a federal court considers whether a criminal defendant's prior conviction qualifies as "a violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which increases the sentences of federal defendants who have three prior convictions for "a violent felony." *Descamps,* 133 S. Ct. at 2281-82. The Supreme Court initially looked to the "categorical approach," where the elements of the prior conviction statute are compared with the elements of the "generic" crime, meaning the offense as commonly understood. *Id.*

*Moncrieffe* involved determining whether a prior state conviction qualifies as an "aggravated felony" under the Immigration and Nationality Act ("INA"), using the same elements-focused "categorical approach" at issue in *Descamps. Moncrieffe,* 133 S. Ct. at 1682. A non-U.S. citizen is deportable under the INA if convicted of an "aggravated felony," which the INA defines as including "illicit trafficking in a controlled substance" including conduct the Controlled Substances Act makes punishable as a felony. *Moncrieffe,* 133 S. Ct. at 1683. The petitioner in *Moncrieffe* had previously pled guilty to a marijuana offense under state law. The Supreme Court held that state-law marijuana conviction did not qualify as an aggravated felony under the INA because the state charge would not have been punished as a felony under federal law. *Id.* at 1687.

In this case, Israel was sentenced under the career offender portion of the Sentencing Guidelines, not the ACCA or the INA. While both cases involved use of a categorical approach, they simply do not apply to the determination of whether Israel qualified as a career offender under the federal Sentencing Guidelines. *See Ferguson v. United States,* 2014 WL 105022, at *1 (S.D. Ga. Jan. 9, 2014) ("*Moncrieffe* simply does not apply to a 'controlled substance offense' under the sentencing guidelines."). Israel's reliance upon *Descamps* and *Moncrieffe* to contend the Court here should have compared K.R.S. § 218A.1412 to 21 U.S.C. § 841 or a "generic" federal controlled substance crime is simply incorrect where the guidelines already provide the comparison provision. *Dumas v. United States,* 2013 WL 1914329, at *4 (E.D. Mich. May 8, 2013) ("Thus reference to the CSA [Controlled Substances Act] — including the provisions of § 841(b) — is not required under the guidelines when the predicate offense is a state conviction.").

Israel takes his argument a step further, advocating that the Court should actually apply the modified categorical approach because in comparing the elements of K.R.S. § 218A.1412 with those

28

of 21 U.S.C. § 841(b), the elements do not match. Specifically, Kentucky's statute requires a defendant "knowingly" traffic, while the federal statute uses the scienter terms "knowingly" and "intentionally." Israel points out that the state statute does not include "intentionally" trafficking in the statute's wording, nor can it be shown that he "intentionally" trafficked in cocaine by examining the limited state court plea documents permitted under the modified categorical approach.

There are at least two problems with this argument. One, it is an incorrect comparison at the forefront, the legally correct comparison being between the statute of prior conviction and the Sentencing Guidelines provision, as already addressed hereinabove. And two, even were the federal statute the appropriate comparison, which it is not, the Kentucky statute already contains the same "knowingly" scienter term as is in § 841(a). The Kentucky statute is not required to also contain "intentionally"; the federal drug statute prohibits knowingly *or* intentionally trafficking. The statute of prior conviction can be more narrow in scope than its federal comparison and still fit within the categorical approach. It just cannot be more broad in scope without giving rise to application of a modified categorical approach.

In sum, Israel's argument that counsel erred by not challenging that his 2003 state conviction qualified as a predicate controlled substance offense for his designation as a career offender is without merit. Counsel's failure to object was not outside the range of professionally competent assistance because such an objection had no reasonable legal basis. *See Martin,* 45 F. App'x at 381-82. This ineffective assistance of counsel claim does not afford Israel any relief in his § 2255 Motion.

### 3. Objecting to Sgt. Ensminger's testimony and renewing Motion to Suppress

In this third claim of ineffective assistance of counsel, Israel maintains his trial counsel's representation of him was constitutionally ineffective because counsel failed to object at trial to what Defendant argues was false testimony by Sgt. James Ensminger. This allegedly false testimony pertains to Sgt. Ensminger's conduct in entering and securing the premises at Defendant's residence following Defendant's arrest and prior to law enforcement executing a search warrant at the residence. (R. 115-1, at 18-21). According to Defendant, had Attorney Hicks objected and pointed out Sgt. Ensminger's false testimony to the Court, then renewed his motion to suppress on the basis that Sgt. Ensminger had violated his Fourth Amendment rights, the Court would have suppressed from admission at trial the evidence from that subsequent search.

Upon questioning by the Assistant U.S. Attorney, Ensminger testified about the events surrounding Defendant's arrest and his entry of the residence as follows:

> . . . . He [Israel] slowly just drove around him [a detective blocking the roadway], and then probably about 30 miles an hour up Russell Cave, went right back the same way he came, and pulled into his driveway where I then got out and placed him under arrest.
>
> Q.    All right. And when you – once you placed him under arrest, can you tell us about that?
>
> A.    Yeah. That was uneventful. He wasn't resisting. He wasn't fleeing from us. I think my impression at the time was he was in shock and didn't know what to do. We detained him.
>
> I then went and knocked on the door. A female – and I do not recall her name right away – allowed me in. I explained to her that Mr. Israel is under arrest, and we needed to come in the house to make sure no one else was in the house and to get everyone out of the house.
>
> I stayed with her while another detective cleared the house and made sure nobody was hiding in the house. We then pulled her out and stood on the front porch and began talking with her.
>
> . . . .

Q.    All right.  All right.  And so you cleared the house to make sure there wasn't anybody present.  Was there anybody else in the house?

A.    Jashae [Watts] and I think a child but no other adults.

Q.    Okay.  And tell us what happened next.

A.    Took her to the front porch, advised of her Miranda rights, told her she wasn't under arrest but advised her of her Miranda rights.  Then left her with another detective that was there with us.

(R. 96, at 15-17).  Defense counsel elicited the following testimony from Sgt. Ensminger on this point:

Q.    All right.  Now, when you approached the door at Burgess [Defendant's house], so you just tapped on the door and what, Ms. Watts opened it; is that correct?

A.    I don't recall if she opened it or if I opened it.  I think there was a storm door or a glass door, but either way I made entry into the house and cleared it for suspects.

Q.    Okay.  Well, I mean, was she inviting you in, or did you somehow make entry after –

A.    She was – she was very cooperative.  I spoke with her.  We didn't just run in the house.  I spoke with her, told her what we were doing, we were going to clear the house to make sure no one else was in there.  And she cooperated.

(R. 96, at 28).  The United States subsequently called Defendant's girlfriend, Jashae Watts, to testify.

Upon cross-examination by Attorney Hicks, Ms. Watts related the following as to Sgt. Ensminger's

entry of the house:

Q.    All right.  Tell me about your first contact with any law enforcement officer on this particular day.

A.    I was in the kitchen, and he came through the door with his weapon and asked if anybody else was in the residence and for me to come out because he was detaining me.

31

Q.    We've heard testimony about a storm door that I take it means that you could – could you see out of the front of the residence –

A.    Uh-huh.

Q.    – from the kitchen?

A.    Yes.

Q.    All right.  Okay.  So the main door would have been opened?

A.    Yes.

Q.    All right.  And so he comes up to the door, knocks or yells at you; is that right?  How do you – how does he come to your attention?

A.    He comes in.  I don't recall him knocking.  He came in and asked if anybody else was in the residence and for me to come out.

Q.    Okay.  And came inside with a weapon drawn.  Is that what you're saying?

A.    Yes.

(R. 96, at 98-99).

Israel contends that Watts's testimony evidences Ensminger did not, in fact, knock but rather made a "forceful entry" into the house with his gun drawn.  Thus, according to Defendant, Sgt. Ensminger lied to the Court about his entry into the house.  Defendant argues that Sgt. Ensminger testified falsely and did not "knock and announce" as he was obligated to do under the Fourth Amendment.  According to Defendant, had counsel objected and pointed this out to the Court, "the evidences procured 'ensuing' the execution of a warrant which lacked a proper knock and announcement would have been inadmissible." (R. 115-1, at 20).

In response, the United States offers that knock-and-announce applies to the execution of a search warrant, whereas here Sgt. Ensminger was performing a protective sweep to ensure officer safety and preserve evidence. (*See* R. 123, at 7-8).  The general requirement that law enforcement,

32

absent a recognized exception, must knock and announce their presence and purpose is grounded in the common law and imposed pursuant to the Fourth Amendment's reasonableness requirement where officers seek entry to effectuate a search or seizure. *Wilson v. Arkansas,* 514 U.S. 927 (1995). The cases relied upon by Defendant in his § 2255 Motion all involved such circumstances, where law enforcement was required to knock and announce their presence and purpose before entry to arrest or to execute a search warrant. (R. 115-1, at 20).

In this case, the Government points out that Sgt. Ensminger's entry of the residence was to conduct a protective sweep to secure the premises. (R. 123, at 7). The practice of conducting a protective sweep of an area, which the Supreme Court in *Maryland v. Buie,* 494 U.S. 325 (1990), permitted in conjunction with arresting suspects, has been extended by the Sixth Circuit to circumstances where officers have need to secure premises for officer safety and to preserve evidence while a search warrant is obtained. *United States v. Taylor,* 248 F.3d 506 (6th Cir. 2001).

> [T]he Supreme Court has held that because evidence may be removed or destroyed before a warrant can be obtained, an officer does not violate the Fourth Amendment by securing the area to be searched and waiting until a warrant is obtained. *Id.* [citing *Segura v. United States,* 468 U.S. 796, 810 (1984)]. We think it follows logically that the principle enunciated in *Buie* with regard to officers making an arrest–that the police may conduct a limited protective sweep to ensure the safety of those officers–applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained. We emphasize, however, that the purpose of such a protective sweep is to protect the safety of the officer who remains at the scene, and for that reason, the sweep must be limited to a cursory search of the premises for the purpose of finding persons hidden there who would threaten the officer's safety.

*Id.* at 513-14. The testimony in this case from both Sgt. Ensminger and Jashae Watts was that Ensminger explained the officers were there to check and see if there was anyone else in the house and to clear the house of all persons. This action by Sgt. Ensminger is consistent with conducting a protective sweep.

33

Israel has not shown that law enforcement must comply with a knock-and-announce requirement when a protective sweep is being performed. But even assuming Israel could show this, his claim is still without merit because he has not shown that the evidence is undisputed that Sgt. Ensminger made a "forceful entry," failing to announce his presence and purpose. Ensminger testified he knocked on the door; does not recall who actually opened the storm door–Ms. Watts or him; that Ms. Watts permitted entry; and that he explained to her that Israel had been arrested and officers needed to clear the house of any persons. (R. 96, at 16, 28). He said officers "didn't just run into the house" and described Ms. Watts as very cooperative. (*Id.* at 28). Ms. Watts testified that the main door was open; that Sgt. Ensminger "came through the [storm] door with his weapon"; that she "[didn't] recall him knocking"; and that he asked her about anyone else being in the residence. (R. 96, at 98-99).

There was no testimony offered that directly established Sgt. Ensminger made a "forceful entry" into the house, as Defendant contends. Israel appears to argue that Sgt. Ensminger having his gun drawn equates with it being a forceful entry, thereby rendering the subsequent search "illegal, unlawful, and unconstitutional." (R. 115-1, at 20). However, even if Sgt. Ensminger had drawn his firearm in conducting the protective sweep, this does not necessarily mean that a Fourth Amendment violation occurred. *See Anderson v. United States,* 107 F. Supp. 2d 191, 199 (E.D.N.Y. 2000) ("there is nothing inherently unreasonable about an officer conducting a protective sweep with his or her weapon drawn"), *aff'd,* 41 F. App'x 506 (2d Cir. 2002). Even if Jashae Watts had unequivocally testified that Sgt. Ensminger did not knock or explain his purpose, which she did not, Sgt. Ensminger nevertheless testified otherwise. Such differing testimony creates a credibility issue

34

for the jury, not a legal basis for trial counsel to seek to strike testimony as false and move to suppress evidence.

Moreover, even if Defendant were able to show that knock-and-announce applies to protective sweeps and that the undisputed evidence showed that Sgt. Ensminger failed to knock and announce, this claim still fails. This is because the Supreme Court has ruled that suppression of evidence is not an appropriate remedy for violations of the knock-and-announce rule. *Hudson v. Michigan,* 547 U.S. 586, 599 (2006); *see also United States v. Roberge,* 565 F.3d 1005, 1010 (6th Cir. 2009) ("suppression is not a remedy for violation of the knock-and-announce rule"); *United States v. Smith,* 526 F.3d 306, 311 (6th Cir. 2008) (finding, under *Hudson,* the only remedy available for violations of the knock-and-announce rule was a civil action for damages under 42 U.S.C. § 1983, and not the suppression of evidence); *United States v. Mendizabal,* 214 F. App'x 496, 500 (6th Cir. 2006) (suppression properly denied where knock-and-announce violation occurred in execution of otherwise valid search warrant); *United States v. Houston,* 2013 WL 1247677, at *1 (E.D. Tenn. 2013) (suppression not available remedy for knock-and-announce violation when officers were executing warrant to search residence).

While Israel "believes that the outcome would have been different had counsel challenged the agent's lies concerning his unannounced entry and his no-knock entry" and that "counsel's motion to suppress the evidence would have been honored in Petitioner's favor" (R. 115-1, at 21), these are just that—Defendant's beliefs. Defendant has not shown that knock-and-announce applies to protective sweeps. Nor has he shown that the testimony at trial was conclusive that Sgt. Ensminger violated knock-and-announce. Nor can he show that suppression was an available remedy even if knock-and-announce applied and it were undisputed that it was violated. His

35

argument simply has no factual or legal merit.   Attorney Hicks, in rendering the competent representation required by the Constitution, had no obligation to present this meritless argument nor has Defendant shown that his defense was prejudiced by trial counsel's decision not to do so. Counsel had filed a prior motion to suppress, claiming the search warrant was based on stale information and lacked probable cause. (R. 41).   The District Judge rejected these arguments and found the search warrant was valid. (R. 47; R. 48).   Given the Supreme Court's decision in *Hudson v. Michigan,* a different outcome would not have occurred at trial had counsel made a renewed request to suppress based on Sgt. Ensminger having violated the knock-and-announce rule. *See Choullam v. United States,* 2011 WL 3962601, at *3 (S.D.N.Y. Sept. 6, 2011) ("Choullam's third claim is closely related to his second—namely, that counsel's failure to renew the suppression motion at trial was itself ineffective assistance. . . . Given that the Court had denied the motion shortly before the trial commenced, counsel was under no obligation to renew a motion that was virtually certain to fail. 'Counsel certainly is not required to engage in the filing of futile or frivolous motions.'" (quoting *United States v. Nersesian,* 824 F.2d 1294, 1322 (2d Cir. 1987))).   Israel has failed to satisfy either prong of *Stickland* for this third claim of ineffective assistance of counsel.

### 4.   Setting forth Defendant's version of the facts

Finally, Defendant claims his trial counsel was ineffective for failing to argue an alternative description of the events leading to Defendant's arrest.  (R. 115-1, at 22).   In Defendant's alternate description of the events, he alleges his co-defendant Chenault, who supplied the package containing what was believed to be cocaine, came into Defendant's house "as nothing more than a guest," hid the package in Defendant's bathroom, and ran out of the house while Defendant was using the bathroom, stealing Defendant's money on his way out.  (*Id.* at 22-23).   Defendant claims he

discovered the "odd package" while using the bathroom and ran out of the house to confront Chenault out of curiosity. (*Id.* at 23). According to Defendant, had trial counsel presented this alternative description at trial, "the outcome would have been different in [his] criminal case." (R. 115-1, at 23). In its Response, the Government claims Defendant did not meet his burden because he failed to provide any details in which Defendant relayed his description of the facts to his trial counsel. (R. 123, at 8). In his affidavit, Defendant's trial counsel claims Defendant never told him this story. (R. 123-1, at ¶ 7; "...the explanation regarding how the 'cocaine' came to be in Mr. Israel's house, given by Mr. Israel in his Memorandum, was absolutely positively never mentioned at any time during the preparation for his trial."). As set forth below, Defendant has failed to satisfy either *Strickland* prong, thus his final ground alleging ineffective assistance of counsel fails. 466 U.S. at 690, 692.

This ground fails to satisfy the first prong of *Strickland*, as Defendant cannot show his trial counsel's conduct was "outside the range of professionally competent assistance." *Id.* at 690. A defendant who claims his counsel was constitutionally ineffective bears a heavy burden of proof. *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006). Further, "matters of trial strategy are left to counsel's discretion," and "where a defendant focuses on counsel's 'strategic choices made after thorough investigation of law and facts,' the Supreme Court guides us that such choices 'are virtually unchallengeable.'" *Dixon v. Houk*, 737 F.3d 1003, 1012 (citing *Strickland*, 466 U.S. at 690).

Defendant has failed to meet such a heavy burden here, as he has failed to show his former counsel was even aware of the alternative description of events. Defense counsel cannot be expected to argue alternative facts without being presented with them, or substantial evidence to support such

alleged facts.[8]  Even if, assuming arguendo, defense counsel were aware of Defendant's alternative factual explanation, it would be within his counsel's sound discretion to choose, as a matter of trial strategy, not to raise such an argument seemingly unsupported by the weight of the evidence in this case.  Further, as stated in defense counsel's letter to Defendant, based on counsel's interview of Defendant's girlfriend at the time, counsel informed Defendant that "she would state that [Defendant] told her to get everything out of the bathroom and throw it over the fence.  She did that." (R. 115-1, at 34).  This interview would have included inquiries into the information or evidence that could possibly support Defendant's claim, if such exculpatory information or evidence existed.  Instead, Defendant's counsel concluded the interview offered no support to Defendant's case.  Considering the facts set forth above, counsel's actions were not outside of the range of professionally competent assistance.  Therefore, Defendant's claim that his trial counsel was ineffective due to his alleged failure to argue Defendant's alternative description of the events leading to Defendant's arrest fails the first *Strickland* prong.

Defendant's ground also fails the second *Strickland* prong, as he has failed to show his defense was prejudiced by defense counsel's alleged failure to set forth Defendant's alternative description of the events.  466 U.S. at 687.  It is Defendant's burden to establish this prong by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

Although not binding on this Court, the case of *Royster v. Jenkins* from the Southern District of Ohio is particularly helpful.   *Royster v. Jenkins*, 2017 WL 663556 (S.D. Ohio Feb. 17, 2017).  In *Royster*, the petitioner's § 2254 petition alleged his trial counsel was ineffective for failing to

---

[8] Defendant did file loan documentation in his attempt to support his contention that he had a large amount of cash at his residence for purposes other than to purchase cocaine. (R. 129-1).  This documentation was discussed at length in Section II.A. hereinabove.

introduce evidence in support of Defendant's claimed alibi that the reviewing court deemed not to be credible. *Id*. at \*4. The petitioner claims he presented the documentation supporting his alibi to his counsel, but his counsel failed to investigate the matter further. *Id*. According to the court, due to the insufficiency of the evidence as it pertained to negating the petitioner's guilt, the petitioner could not satisfy the requirements of *Strickland*, and thus his argument was deemed insufficient for purposes of *habeas corpus* relief. *Id*.

Here, assuming arguendo Defendant's trial counsel was presented with Defendant's description of the events, and argued such at trial, the evidence presented to the jury weighs overwhelmingly against Defendant. (*See* R. 96, at 22-27). Explaining he received approximately $30,000 in student loan funds does not mean the jury would accept this was available and stolen by Chenault, nor does Defendant's description of what he says occurred actually explain the currency counter, or the handbooks pertaining to marijuana cultivation and cocaine, or the cocaine purity field test kits, or the rubber gloves, plastic sandwich bags, digital scales and other items containing cocaine residue, or the cocaine cutting agents, or the cellular phones, or the firearms and ammunition. (*See* R. 77, at 5). Just as in *Royster*, because Defendant's theory and evidence in support of such theory do not adequately refute the substantial evidence against his theory, Defendant cannot show his defense was prejudiced by his counsel's alleged failure to present such a theory.

Further, although Defendant asserts an alternative description of the events that transpired, he does not assert how such a description could have been presented at trial. As previously stated, except for the loan documentation, there are no witnesses or other evidence offered by Defendant or evident to this Court that would support such a description. Even overlooking the fact that the documentation was untimely filed, such documentation alone is not enough to support Defendant's

theory.  Defendant did not testify at trial, and neither did his codefendant.  Defendant's girlfriend testified on behalf of the Government.  (*See* R. 96, at 78-95).  Defendant has not identified, and the Court is unaware of any other individuals that could lend testimony in support of Defendant's theory. As Defendant has set forth little to no evidence in support of his alternative theory that is directly contradicted by the weight of evidence presented against him at trial, Defendant has failed to show his defense was prejudiced by his counsel's actions, or alleged inactions, in not presenting such a theory at trial.  Therefore, Defendant's final ground alleging ineffective assistance also fails to satisfy *Strickland's* second prong.  466 U.S. at 687.  As Defendant's final ground alleging ineffective assistance of counsel fails to satisfy either *Strickland* prong, this ground also fails to warrant Defendant any relief on his § 2255 Motion.

## C.    Evidentiary Hearing

Defendant requests an evidentiary hearing on his pending § 2255 Motion, and also that counsel be appointed to represent him at such hearing.  (R. 128).  However, an evidentiary hearing is not necessary in this case because there are no genuine issues of material fact in dispute and the record conclusively shows that Defendant is not entitled to any relief under 28 U.S.C. § 2255.  *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). "If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

The Court has concluded that Defendant is not entitled to relief based on the information in the record. As aforementioned, Defendant's factual allegations are directly refuted by the record in this case, which includes the presentation of a plethora of evidence against Defendant in the form of drug residue, drug paraphernalia, and other incriminating items found at the Defendant's home, as well as corroborated testimony of his girlfriend stating Defendant instructed her to dispose of evidence. (*See* R. 96, at 89-93). Further, Defendant's allegations are inherently incredible to the extent that in the Motion he offers an alternative description of the events that led to his arrest and conviction, yet states he would have pleaded guilty to the charge if he had been properly advised. (R. 115-1, at 33). Therefore, an evidentiary hearing is not required, and it will be **recommended** that Defendant's requests be **denied as moot.**

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Regarding the case at hand, reasonable jurists would not debate the denial of Defendant's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1)    Defendant Israel's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. 115), be **denied;**

(2)    Defendant's Motion for Evidentiary Hearing and request for appointed counsel contained therein (R. 128) be **denied as moot;**

(3)    this matter be **dismissed** and **stricken** from the active docket of this Court; and,

(4)    the issuance of a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may

serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 12th day of February, 2018.



Signed By:

***Candace J. Smith***

**United States Magistrate Judge**

C:\Users\Candace J Smith\Desktop\14-98 Israel R&R final.wpd

43